COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

RAYMONE BERNARD JACKSON,

      Defendant-Appellant.

UNPUBLISHED
October 18, 2016

No. 327203
Wayne Circuit Court
LC No. 14-006164-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

RAPHEAL DANIEL-JORDAN HEARN,

      Defendant-Appellant.

No. 327259
Wayne Circuit Court
LC No. 14-007717-FC

---

Before: MURRAY, P.J., and CAVANAGH and WILDER, JJ.

PER CURIAM.

Defendants Raymone Bernard Jackson and Rapheal Daniel-Jordan Hearn were tried jointly, by one jury. Jackson was found guilty of the first-degree premeditated murder of Kamiya Gross, MCL 750.316(1)(a); torture, MCL 750.85; two counts of assault with intent to commit murder of Kenneth French and Chelsea Lancaster, MCL 750.83; felonious assault of Toni Holt, MCL 750.82; felon-in-possession, MCL 750.224f; and felony-firearm, MCL 750.227b. Hearn was found guilty, as an aider and abettor, of the first-degree premeditated murder of Kamiya, two counts of assault with intent to commit murder of French and Chelsea, and felony-firearm. Defendants appeal as of right and we affirm.

Defendants plotted revenge against French and his family for French's role in the shooting of Hearn three months earlier at a motorcycle club. On July 1, 2014, defendants located French at Holt's house, where French's two-year-old daughter Kamiya was playing outside with Holt's 12-year-old daughter Chelsea. French and Holt were sitting on the front porch while the children played. Defendants first drove past the house in a white vehicle and then drove behind

the house and stopped. Defendant Jackson got out of the vehicle and, after approaching French from the side of Holt's house, started shooting. Kamiya, Chelsea, and French were shot. Jackson then returned to the waiting vehicle and was driven away from the crime scene. Kamiya died from a gunshot to the head. Chelsea and French were hospitalized for multiple gunshot injuries.

I

On appeal, defendant Jackson argues that the trial court should have severed the trial or utilized two juries. We disagree.

"This Court reviews for an abuse of discretion a trial court's decision regarding the severance of trials when multiple defendants are involved." *People v Bosca*, 310 Mich App 1, 43; 871 NW2d 307 (2015); see also MCL 768.5.

"There is a strong policy favoring joint trials in the interest of justice, judicial economy, and administration, and a defendant does not have an absolute right to a separate trial." *People v Etheridge*, 196 Mich App 43, 52; 492 NW2d 490 (1992). A trial court must sever the trial of codefendants on related offenses only when the defendant shows that "severance is necessary to avoid prejudice to substantial rights of the defendant." MCR 6.121(C). See also *Etheridge*, 196 Mich App at 53. To show that severance is necessary, a defendant must provide the court with a supporting affidavit, or make an offer of proof, "that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994). Such a showing is not made by codefendants' plans to present inconsistent defenses. *Id*. at 349. The Supreme Court in *Hana* further explained:

> "It is natural that defendants accused of the same crime and tried together will attempt to escape conviction by pointing the finger at each other. Whenever this occurs the co-defendants are, to some extent, forced to defend against their co-defendant as well as the government. This situation results in the sort of compelling prejudice requiring reversal, however, only when the competing defenses are so antagonistic at their cores that both cannot be believed. Consequently, we hold that a defendant seeking severance based on antagonistic defenses must demonstrate that his or her defense is so antagonistic to the co-defendants that the defenses are mutually exclusive. Moreover, defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant." [*Hana*, 447 Mich at 349-350, quoting *State v Kinkade*, 140 Ariz 91, 93; 680 P2d 801 (1984).]

"The use of separate juries is a partial form of severance to be evaluated under the standard, set forth above, applicable to motions for separate trials." *Id*. at 331.

Nothing in the record on appeal demonstrates the prejudice required by MCR 6.121(C). Jackson argued that he was not present during the shooting but, even if he was present, he lacked the necessary intent to be convicted of first-degree murder. Hearn argued that he was not present

during the shooting but, even if he was present, he did not aid or abet the crimes. Thus, the defenses were not so antagonistic that they could not both be believed. See *Hana*, 447 Mich at 349-350. Rather, in some ways, they were complimentary. Both defendants argued that the prosecutor's theory that they plotted for revenge against French was far-fetched and undocumented. The trial court did not abuse its discretion by denying severance under MCR 6.121(C).

Under MCR 6.121(D), a trial court nevertheless has the discretion to grant a request for severance "on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants." When determining if severance is appropriate, a trial court may consider factors like "the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence" and "the convenience of witnesses." MCR 6.121(D).

Jackson argues that, even if severance was not mandated, it would have promoted fairness because Hearn's statements were admitted against Jackson to establish premeditation. Jackson argues that, if the cases had been severed, there would have been a lack of evidence of premeditation necessary to convict. But as we discuss later in this opinion, Hearn's statements were properly admitted against Jackson. Because the same evidence was admissible against both defendants, Jackson cannot establish that severance would have resolved any confusion resulting from the nature of the evidence. Accordingly, we also conclude that the trial court did not abuse its discretion by denying severance under MCR 6.121(D).

II

Next, Jackson argues that his constitutional right to confrontation was violated because the trial court admitted into evidence text messages by Hearn to Jackson and a letter passed from Hearn to Jackson in jail. We disagree.

In every criminal trial, the federal and state constitutions protect a defendant's right to be confronted with the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20. "The Confrontation Clause of the Sixth Amendment bars the admission of 'testimonial' statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness." *People v Walker* (*On Remand*), 273 Mich App 56, 60-61; 728 NW2d 902 (2006). "The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witnesses." *People v Watson*, 245 Mich App 572, 584; 629 NW2d 411 (2001) (quotation marks and citation omitted). A statement "is testimonial if the declarant should reasonably have expected the statement to be used in a prosecutorial manner and if the statement was made under circumstances that would cause an objective witness reasonably to believe that the statement would be available for use at a later trial." *People v Dendel* (*On Second Remand*), 289 Mich App 445, 453; 797 NW2d 645 (2010). On the other hand, statements are nontestimonial when they are "made informally to an acquaintance, not during a police interrogation or other formal proceeding . . . or under circumstances indicating that their 'primary purpose' was to 'establish or prove past events potentially relevant to later criminal prosecution.' " *People v Taylor*, 482 Mich 368, 378; 759 NW2d 361 (2008), citing *Crawford v*

*Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004), and quoting *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006).

In *Taylor*, 482 Mich at 377, our Supreme Court held that, "[w]hile nontestimonial statements are subject to traditional rules limiting the admissibility of hearsay, they do not implicate the Confrontation Clause." The statements in *Taylor* were nontestimonial because the declarant made them as a part of "a pattern of impugning communications volunteered spontaneously and without reservation to a friend, not delivered to police, and without any apparent secondary motivation other than the desire to maintain the benefits of the relationship's confidence and trust—and according to the record, to brag." *Id.* at 380 (quotation marks and citation omitted).

Here, defendants were longtime friends. After Hearn was shot in April 2014, they exchanged text messages about the incident and plotted retaliation. There is no indication that the purpose of these text messages, let alone the primary purpose, was to " 'establish or provide past events potentially relevant to later criminal prosecution.' " *Id.* at 378, quoting *Davis*, 547 US at 822. Similarly, the letters exchanged between defendants in jail were informal and passed in secret, in violation of jail rules requiring inmates to communicate through the United States mail. None of defendants' communications were made during a police interrogation or formal proceeding. Therefore, the Confrontation Clause was not implicated.

III

Next, Jackson argues that the admission of the lyrics for the rap song, "Homicide," and evidence that defendants listened to and discussed it, was not relevant and any probative value was substantially outweighed by the danger of unfair prejudice. We disagree.

Pursuant to MRE 401, evidence is relevant when it has a tendency to make a material fact more or less probable. "Materiality, however, does not mean that the evidence must be directed at an element of a crime or an applicable defense. A material fact is one that is 'in issue' in the sense that it is within the range of litigated matters in controversy." *People v Sabin (After Remand)*, 463 Mich 43, 57; 614 NW2d 888 (2000) (quotation marks and citation omitted). The prosecutor's theory of the case was that Hearn and Jackson plotted revenge against French and his family for his role in Hearn's shooting in April 2014.[1] The facts that defendants listened to the song and communicated about the lyrics—"kill up everything in his family"—as they planned to "smoke dem n*****" and then later shot French, his two-year-old daughter, Kamiya, and his 12-year-old cousin, Chelsea, tended to make their plot for revenge more probable.

Jackson claims that the rap song nevertheless should have been excluded because it was more prejudicial than probative under MRE 403. MRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue

---

[1] French testified that he was in charge of security at a motorcycle club on the night that Hearn was shot and Hearn was angry with French for failing to shoot the man who shot him.

-4-

delay, waste of time, or needless presentation of cumulative evidence." "All relevant evidence is prejudicial; it is only unfairly prejudicial evidence that should be excluded." *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005).

> The "unfair prejudice" language of MRE 403 " 'refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock.' " Moreover, admission of "[e]vidence is unfairly prejudicial when . . . [the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury." [*People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (citations omitted).]

Jackson claims that defendants' discussion of the song, in April 2014, was too far removed from the shooting in July 2014. But the jury could infer that Hearn and Jackson were planning their revenge for those several months and only waited to commit the crimes until Jackson's tether was removed. Jackson also claims that the lyrics and the song's title were unfairly prejudicial, but they were offered to show the parallel between the song and defendants' plot and actions. As the trial court instructed, the jury was required to judge the evidence by setting aside biases and was free to reject the prosecutor's theory. We conclude that Jackson has not established that the trial court abused its discretion by admitting the challenged evidence.

IV

Jackson next argues that there was insufficient evidence to support his torture conviction. We disagree.

A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, by considering the evidence in the light most favorable to the prosecution to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). "All conflicts with regard to the evidence must be resolved in favor of the prosecution." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005).

MCL 750.85 provides:

> (1) A person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture and is guilty of a felony punishable by imprisonment for life or any term of years.

> (2) As used in this section:

> (a) "Cruel" means brutal, inhuman, sadistic, or that which torments.

(b) "Custody or physical control" means the forcible restriction of a person's movements or forcible confinement of the person so as to interfere with that person's liberty, without that person's consent or without lawful authority.

Thus, the elements of torture are (1) the intent to cause cruel or extreme physical or mental pain and suffering, (2) the infliction of great bodily injury or severe mental pain or suffering, and (3) the victim is within the person's custody or physical control. Jackson only argues on appeal that the prosecution failed to establish that he had French in his custody or physical control.

Again, from French's testimony, the text messages, and the rap song, the jury could infer that Jackson and Hearn intended to retaliate against French by targeting his family, specifically forcing him to watch his young daughter suffer. The facts demonstrate that French was sitting on the porch while Kamiya and other neighborhood children played in front of the house. When he saw Jackson, French started to walk down the porch steps to greet him. Then, according to French and other witnesses, Jackson shot him. Holt testified that the shooting prevented French from "stray[ing] too far" and he ultimately retreated back to the porch. A bystander also testified that French was "getting shot at" so he could not get off the porch. The jury could conclude that the first shot forcibly restrained French to the porch area while, and so that, Jackson could then shoot and kill Kamiya without French's interference.

In his brief on appeal, Jackson focuses on the fact that the shooting occurred "quickly," and thereby argues that he could not obtain the requisite custody or physical control. But the plain language of MCL 750.85 places no temporal limitations on this element. Given this Court's standard of review requiring facts to be viewed in a light most favorable to the prosecution, we conclude that there was sufficient evidence that French was in Jackson's custody or physical control to support his torture conviction.

V

Next, Jackson argues that the trial court should have provided an instruction on involuntary manslaughter. We disagree.

Jackson requested an instruction on statutory involuntary manslaughter at trial, but did not request an instruction on common-law involuntary manslaughter. On appeal, he does not distinguish between common-law and statutory involuntary manslaughter. We review de novo claims of instructional error involving questions of law, but a trial court's determination that an instruction was not applicable is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (citations omitted). Unpreserved claims of instructional error, however, are reviewed for plain error affecting substantial rights. *People v Aldrich*, 246 Mich App 101, 124-125; 631 NW2d 67 (2001).

In a criminal trial, the instructions given to a jury "must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *McGhee*, 268 Mich App at 606. A jury instruction may be given for a necessarily included lesser offense, but not for a cognate lesser included offense. *People v Reese*, 466 Mich 440, 446; 647 NW2d 498 (2002); *People v Heft*, 299 Mich App 69, 74; 829 NW2d 266 (2012). "A necessarily included lesser offense is an offense in which all its elements are included in the elements of the

greater offense such that it would be impossible to commit the greater offense without first having committed the lesser offense." *People v Apgar*, 264 Mich App 321, 326; 690 NW2d 312 (2004). "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). A rational view of the evidence supports an instruction on a necessarily included lesser offense when the differing element or elements are "sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense." *Id*. at 352 (citations omitted).

## A. COMMON-LAW INVOLUNTARY MANSLAUGHTER

First-degree murder is the intentional killing of a person with premeditation and deliberation. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Second-degree murder is a death caused by the defendant with malice and without justification or excuse. *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014) (citations omitted). Malice is "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998).

Common-law "[i]nvoluntary manslaughter is the unintentional killing of another, without malice, during the commission of an unlawful act not amounting to a felony and not naturally tending to cause great bodily harm; or during the commission of some lawful act, negligently performed; or in the negligent omission to perform a legal duty." *People v Mendoza*, 468 Mich 527, 536; 664 NW2d 685 (2003). "The kind of negligence required for manslaughter is something more than ordinary or simple negligence, however, and is often described as 'criminal negligence' or 'gross negligence'[.]" *People v Herron*, 464 Mich 593, 605; 628 NW2d 528 (2001) (citation omitted). Common-law involuntary manslaughter is a necessarily included lesser offense of murder. *Mendoza*, 468 Mich at 540-541. Consequently, if a defendant is charged with murder, an instruction for involuntary manslaughter must be given if supported by a rational view of the evidence. *Id*. at 541.

Here, a rational view of the evidence did not support a common-law involuntary manslaughter instruction. Jackson argues that he did not intend to shoot Kamiya. But even if she was a victim of transferred intent, as he states in his brief on appeal, he offers no factual support for the remaining elements of this type of manslaughter. To the contrary, shooting at French with the intent to commit murder was a felony and firing a barrage of gunshots in a crowded area would naturally tend to cause great bodily harm. Moreover, Jackson does not claim that he was negligently performing a lawful act or negligently failed to perform a legal duty. Therefore, the trial court did not plainly err by failing to provide an instruction on common-law involuntary manslaughter.

## B. STATUTORY INVOLUNTARY MANSLAUGHTER

The elements of statutory involuntary manslaughter are as follows: (1) a death, (2) the death was caused by an act of the defendant, (3) the death resulted from the discharge of a firearm, (4) at the time of the discharge, the defendant was

-7-

intentionally pointing the firearm at the victim, and (5) the defendant did not have lawful justification or excuse for causing the death. [*People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007).]

As the trial court found, statutory involuntary manslaughter is a cognate lesser offense of murder. *Id*. at 74; *People v Heflin*, 434 Mich 482, 497; 456 NW2d 10 (1990). Therefore, an instruction on that offense was not permissible and the trial court properly denied the request.

VI

Finally, defendant Hearn's only argument on appeal is that he was merely present during the crimes and did not aid in their commission; thus, there was insufficient evidence to support his convictions. We disagree.

Again, first-degree murder is the intentional killing of a person with premeditation and deliberation. *Bennett*, 290 Mich App at 472. Premeditation means "to think about beforehand," and deliberation means "to measure and evaluate the major facets of a choice or problem." *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998) (citation omitted). Premeditation and deliberation "may be inferred from the circumstances surrounding the killing." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). "Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Id*.

"The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010) (quotation marks and citation omitted).

" 'The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony.' " *People v Taylor*, 275 Mich App 177, 179; 737 NW2d 790 (2007), quoting *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

Pursuant to MCL 767.39: "Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." "An aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999) (citation omitted). However, merely being present when a crime is committed is not sufficient. *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999).

Contrary to defendant Hearn's argument, the evidence was sufficient to support his convictions. The record evidence demonstrated a close relationship between Jackson and Hearn. And after Hearn was shot at a motorcycle club, Hearn held a grudge against French for failing to shoot the person who had shot him. The jury could infer that Jackson and Hearn discussed this grudge from the references in their text messages, including: "I been hearing dat 3rd shit."

French testified at trial that he was known as "Third" or "3rd." In addition, Jackson and Hearn exchanged texts regarding Hearn's frustration about the shooting and his desire for retaliation. From Jackson's collective references in these texts to Hearn, such as "we gon smoke dem niggas fasho," and "we gonna get em," the jury could infer that both Jackson and Hearn planned to retaliate against French together. But, as Jackson texted to Hearn, the plan was constrained by Jackson's tether. After Jackson's tether was removed, Hearn returned to the Detroit area from Chicago, where he had been staying. The jury could also infer from his text messages about "the carbine" and "the special" that he was going to get a gun to carry out their plan.

Further, the record evidence showed that defendants were together on the day of the shooting, including that they were riding in the same white vehicle that was seen by witnesses at the crime scene immediately before and immediately after the shooting. And after defendant Jackson left the vehicle on foot to approach and shoot the victims, it was noted that the driver of the white, getaway vehicle was wearing a hat. Defendant Hearn had been seen wearing a hat earlier that day. From these facts, the jury could infer that Hearn was Jackson's getaway driver. And, shortly after leaving the crime scene, video surveillance footage recovered from the Detroit Riverwalk depicted suspects matching the description of defendants, including their clothing, white vehicle, and defendant Hearn's very distinct walk, walking together by the river. In light of the fact that the gun used in the shooting was never recovered, the jury could infer from this evidence that defendants disposed of the weapon during their walk along the river. Viewing all the evidence in a light most favorable to the prosecution, there was sufficient evidence for the trier of fact to conclude that defendant Hearn aided and abetted Jackson's commission of the crimes.

Affirmed.


/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Kurtis T. Wilder

-9-